## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**LESTER E. FISHER,**

      **Plaintiff,**

**vs.**                      **Case No. 4:19-cv-579-WS-MAF**

**S. BEARDEN,**
**et al.,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Lester E. Fisher, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 on November 27, 2019, according to the prison mailbox rule.[1] ECF No. 1. Plaintiff's second amended complaint is the operative complaint. ECF No. 20. The complaint was served upon Defendants. This cause is presently before the Court upon the motion to dismiss filed by Defendants Cox and Robinson for Plaintiff's failure to exhaust his administrative remedies, as required, under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). ECF No. 32.

---

[1] "[A] *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

After careful review of the pleadings in this matter, for the reasons stated below, the motion to dismiss should be GRANTED.

## I.   Plaintiff's Allegations

### A. Plaintiff's Filed Complaints

In his initial complaint, Plaintiff named nine defendants employed at Madison Correctional Institution (MCI): Warden Bearden, Correctional Officer Miller, Correctional Officer Webb, Chief of Security Cox, Sgt. Chandler, Sgt., Robinson, Sgt. Adams, and Sgt. Thompkins. ECF No. 1, pp. 2-5. Plaintiff raised excessive force claims stemming from incidents occurring on August 8 and September 20, 2019, violations of due process, and failure to protect. Id., pp. 7-13. Plaintiff was granted leave to amend. ECF No. 10. In his first amended complaint, Plaintiff sued the same nine defendants making similar allegations. ECF No. 13. Because Plaintiff's complaint was deficient for several reasons, the Court ordered Plaintiff to amend his complaint again. ECF No.15.

Plaintiff filed his second amended complaint, now suing five prison officials, namely:  Warden Bearden, Sgt. Chandler, Sgt. Robinson, Colonel Cox, and Sgt. Adams, all in their individual and official capacities. ECF No. 20, pp. 2-4. Plaintiff alleges that his problems at MCI began in early 2019 when Defendant Chandler confiscated Plaintiff's canteen items in violation

of the Florida Administrative Code and Plaintiff's Due Process rights. Id., p. 6. Plaintiff claims he filed grievances on the issue, which were "approved" for further investigation by the Office of Inspector General, but no investigation followed; and no action was taken against Chandler. Id., p. 7. Plaintiff alleges this sparked a prolonged harassment campaign in which Chandler enlisted the help of fellow officers. Id. Plaintiff's factual allegations, as they relate to Defendants Cox and Robinson, are presented below.

B. Plaintiff's Allegations Against Defendant Robinson

On **August 8, 2019**, Plaintiff, then 59 years old, attempted to go to the canteen line when Defendant Robinson and Officer Miller yelled at him to return to the dorm. Id., p. 8. Plaintiff alleges that Defendant Chandler walked up and cursed at Plaintiff, threatened to use chemical agents on him, and ordered Plaintiff to stand against a concrete electrical pole in the prison yard in the hot sun. Id. Plaintiff asserts the action by Chandler violated the prison regulations and his constitutional rights. Id. Defendants Robinson, Adams, and two other officers laughing at and taunted Plaintiff. Id. Chandler cursed and threatened Plaintiff again when Plaintiff refused Chandler's directive to turn around and face the pole. Id. Plaintiff claims the other officers were indifferent to this treatment. Id. Plaintiff alleges that after one hour at the pole, his blood pressure was elevated, his vision was blurry, and he almost fainted.

Id., p. 9. Plaintiff declared a medical emergency to Defendants Robinson and Chandler who did not assist him. Id. After two hours, Defendant Chandler finally ordered Plaintiff to return to the dorm and told Officer Webb to make Plaintiff go back to the dorm without going to medical. Id. Eventually, Plaintiff was able to get a pass to medical from another officer. Id. Upon arrival, Plaintiff's blood pressure was elevated; and he had to take more of his prescribed medication. Id. Plaintiff claims he filed an informal grievance about the failure of Robinson and others to intervene, that he received no response to the grievance by August 31, so, he filed a formal grievance with the Warden but nothing further. Id., p. 11.

On **September 20, 2019**, at approximately, 6:15 p.m., Plaintiff was "involved in a verbal altercation" with Sgt. Pepera who ordered him "to submit to handcuffs" to be "place[d] . . . in confinement." Id., pp. 11-12. Pepera called Defendant Robinson, who was nearby, for assistance. Id., p. 12. Plaintiff claims he "took off running" into another "wing" because he was afraid of Robinson Id. Robinson and Officer Small searched for and found Plaintiff and cursed at him to "cuff up." Id. Plaintiff submitted to handcuffs; and Robinson escorted him out. Id. Plaintiff alleges that when they reached the exit door, Robinson "jammed" Plaintiff's face into the door, effectively, opening the door with Plaintiff's face, and then slammed Plaintiff's head into

the wall. Id. Robinson grabbed Plaintiff's legal documents and eyeglasses from him, threw them on the ground, and escorted Plaintiff to medical for a pre-confinement examination. Id.

Once at medical, Plaintiff informed the nurses of the details of the incident and told them he had swelling on the right side of his face; but a nurse responded, "I don't see anything." Id. The next day, Plaintiff "experienced psychological distress (fear, anger, anxiety) and declared [a] psychological emergency." Id.

Plaintiff's claims he filed grievances against Robinson "alleging staff abuse and requesting protection from the clique of abusive officers." Id., p. 13. Plaintiff claims he sent the Florida Department of Law Enforcement (FDLE) a copy of the grievance and requested an investigation into the alleged assault by Robinson; and FDLE interviewed Plaintiff about the alleged assault. Id.

C. Plaintiff's Allegations against Defendant Cox

Apparently, Plaintiff's claims against Defendant Cox stem from Cox's failure to properly respond to Plaintiff's grievances alleging staff abuse. Plaintiff claims on **August 8, 2019**, he submitted grievances to Defendant Cox alleging abuse by Chandler. Id., p. 9. The grievance coordinator responded that Plaintiff's complaint was forwarded to the Office of the

Inspector General for further investigation. Id. Plaintiff claims he filed additional grievances with Cox against Defendants Robinson, Adams, and another officer for witnessing the August 8, incident and failing to intervene. Id., p. 10. Plaintiff claims that even though he informed Cox that he had witnesses, no names were ever obtained from him and no credible investigation was conducted. Id.

Plaintiff claims he filed a grievance directly to the Office of the Warden. Id., p. 10. According to Plaintiff, the Warden responded two weeks later, on August 22, 2019, advising him that the complaint was forwarded to the Office of the Inspector General for further investigation. Id., pp. 9-10. No further action was taken. Id., p. 10. When Plaintiff inquired of the status, Defendant Warden Bearden advised Plaintiff that his complaint was referred to the inspector general. Id., pp. 10-11.

Plaintiff's complaint is unclear as to whether he filed a grievance with Cox, the Warden, and the FDLE regarding the incident which occurred on September 20, 2019. See id., p. 13. However, Plaintiff claims that on September 21st or 22nd, Cox and Bearden came to his unit as part of the housing inspection team. Id. Plaintiff alleges he informed Cox he had been assaulted by Robinson and asked for a transfer to another prison. Id. Cox responded he "would look into it." Id. Plaintiff alleges that once he was

released from confinement, he reported the incident to his family; and his sister communicated to Bearden and asked for a transfer. Id. Cox sent an email to Plaintiff's sister "falsely informing her that 1) he had personally spoken with [Plaintiff] . . . that [he] was 'fine' and no longer wished to pursue the issue of the assault . . . 2) [Plaintiff] could not identify the officer who assaulted [him] and 3) [Cox] would not tolerate inmate abuse." Id. Finally, Plaintiff alleges that on January 3, 2020, as "direct reprisal for [Plaintiff's] complaints of staff abuse," Cox initiated and approved Plaintiff's placement in confinement "under investigation status" by the "gang coordinator" officer. Id., p. 14.

On the civil rights complaint form provided by the Court, Plaintiff was warned that failure to exhaust administrative remedies would result in dismissal under the Prison Litigation Reform Act. Id., p. 19.

## II.   Standard of Review

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); Porter v. Nussle, 534 U.S. 516, 524 (2002); Gould v. Owens, 383 F. App'x 863 (11th Cir. 2010). There is no discretion to waive this requirement. Id. The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. Woodford v. Ngo, 548 U.S. 81 (2006). The

exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. <u>Porter</u>, 534 U.S. at 525. This includes the filling of an appeal. Even if an appeal were futile, the requirement cannot be waived. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." <u>Id</u>. It is "not generally an adjudication on the merits." <u>Id</u>.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." <u>Id</u>. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." <u>Id</u>. (citing to <u>Bryant</u>, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the Defendant. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

## III.   Defendants Motion to Dismiss, ECF No. 32

Together, Defendants Cox and Robinson claim that Plaintiff has failed to exhaust his administrative remedies regarding the alleged incidents of September 20, 2019, and January 3, 2020; therefore, dismissal is warranted. ECF No. 32. Defendants recognize that Plaintiff took some steps to attempt exhaust his claims but argues those efforts were inadequate to satisfy the exhaustion requirement. Id., pp. 12-15. Particularly, Plaintiff's grievances address the September 20, 2019, altercation only "in general generic terms" and "do[] not allege that his face was jammed into a door or that [his] . . . head was rammed into a wall." Id., p. 12. Generic references are insufficient to properly grieve a claim. Id. In addition, Plaintiff's claim against Robinson

was not properly grieved because the grievance addressed more than one issue, which necessitated the "return[]" of the grievance without approval. Id., p. 13. In short, Defendants maintain that because Plaintiff did not follow the prison's grievance procedure, he failed to exhaust his administrative remedies. Id.

Defendants acknowledge that Plaintiff filed grievances alleging staff abuse and a letter with the FDLE; however, this is legally insufficient to exhaust administrative remedies because the FDLE is the wrong party and sent the grievance to Florida Department of Corrections (FDC) Secretary on Plaintiff's behalf, which fails to follow the administrative procedural rules. Id., pp. 13-14. Moreover, in his letter to the FDLE, Plaintiff admitted he had not filed a grievance because he asked the FDLE to file it for him. Id., p. 14. Defendants assert that Plaintiff did not comply with the procedural rules, including "timely filing . . . to the correct parties"; so, he has failed to exhaust as required under the PLRA. Defendants provide similar examples from the Eleventh Circuit Court of Appeals, which support this position, namely, Pavao v. Sims, 679 F. App'x 819, 821 (11th Cir. 2017); Kozuh v. Nichols, 185 F. App'x 874, 878 (11th Cir. 2006); and Schlicher v. Fla. Dept of Corr., 399 F. App'x 538 (11th Cir. 2010) (unreported op.).

## IV.   Plaintiff's Response, ECF No. 35

Having considered Defendant's motion to dismiss, the Court turns to Plaintiff's Response. ECF No. 35. Plaintiff acknowledges that the exhaustion requirement cannot be waived and that he is required to comply with the grievance procedures. Id., p. 1. Plaintiff argues that the allegation that he has not exhausted his administrative remedies concerning the September 20 assault by Robinson "is false and indisputably dispelled by the record" and cites to his exhibits, copies of the grievances he filed. Id., pp. 1-3. Plaintiff claims Defendants did not respond to his grievances or did not act upon them. Id., p. 3. Plaintiff argues that his claim against Defendant Cox is that Cox failed to investigate his claims of staff abuse, which condoned the abusive conduct. Id., pp. 3-4. In support of his Response, Plaintiff points to his letter to the FDLE dated September 21, 2019, which happens to detail his allegations against other officers as well as his statements made in his complaint. Id., pp. 2-4, 7-8.

The allegations in the motion to dismiss conflict in that Plaintiff maintains his administrative remedies are exhausted. The Court, thus, looks to the record of Plaintiff's history of grievances and the FDC grievance procedure to resolve the issue.

## V.   Discussion – Facts Pertinent to Exhaustion

### A. FDC Grievance Procedures

Plaintiff was in the custody of the Florida Department of Corrections (FDC); therefore, he was entitled to the grievance procedure set forth in the Florida Administrative Code.[2] See Fla. Admin. Code Ann. § 33-103.001.

A prisoner must complete a three-step process to properly exhaust his administrative remedies. The first step in the grievance procedure requires the prisoner to submit an informal grievance "within 20 days" of the incident unless the prisoner receives a 45-day extension. See id., §§ 33.103.002(12), 33.103.011(1)(a). "The inmate shall not file duplicate informal grievances with different staff members." Id., § 33-103.005(1)(c). Next, if the prisoner is not satisfied, within the time allotted, he "may file a formal grievance with the warden's office." Id., § 33-103.006(1)(a). Finally, the inmate may appeal to the FDC Secretary if he "feels [a] grievance has not been satisfactorily resolved during the formal grievance procedure." Id., § 33-103.1007(1).

From the date of receipt, the FDC has ten calendar days to respond to informal grievances, twenty days to respond to formal grievances, and thirty calendar days to respond to appeals and direct grievances to the Office of

---

[2] Defendants outline the statute in the motion to dismiss. ECF No. 32, pp. 8-9. To maintain consistency in the Report, the Court uses the citations to the Code itself.

the Secretary. Id., § 33-103.011(3)(a)-(c). If the FDC does not timely respond to the grievance, the inmate "shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies." Id., § 33-103.11(4).

To properly exhaust his administrative remedies, an inmate must appeal the denial of a grievance. Arias v. Perez, 758 F. App'x 878, 881 (11th Cir. 2019). The inmate properly appeals by completing a Form DC1-303 "within 15 calendar days from the date of the response to the formal grievance." Id., §§ 33-103.006(1), 33-103.011(1)(c). Late appeals or those which are not in compliance with the Administrative Code are returned without further processing. Id. § 33-103.014(1).

B. Plaintiff's Grievances

Plaintiff and Defendants provided copies of Plaintiff's grievances as exhibits. Plaintiff provided copies of his grievances filed during August 2019 as exhibits to his operative complaint, ECF No. 20, pp. 26-34; and with his Response, Plaintiff provided his letter to FDLE dated September 21, 2019, and an informal grievance dated October 22, 2019, ECF No. 35, pp. 7-9. Defendants provide copies of Plaintiff's grievances filed from September 21, 2019, through January 3, 2020, which are certified by prison officials. ECF

Nos. 32-1 – 32-5. For the reasons set forth, Plaintiff has failed to exhaust his administrative remedies.

1. *Many of Plaintiff's grievances make no allegation against Cox or Robinson.*

At least nine of Plaintiff's grievances filed after August 8, 2019, make no allegation against either Defendant Cox or Robinson, which cannot serve to exhaust administrative remedies:

- Grievances #216-1909-0020 and #216-1909-***[3], dated August 30 and 31, 2019, respectively, presenting allegations against Defendant Adams. ECF No. 20, pp. 33, 34.

- Grievance #216-1910-0026, dated October 6, 2019, naming no prison official but alleging Plaintiff had not received his property and legal papers. ECF No. 32-4, pp. 7, 10.

- Grievance #1910-216-048, dated October 15, 2019, naming no person party to this lawsuit and alleging Plaintiff's personal property was lost. Id., pp. 8-9.

- Grievance #216-1910-0153, dated October 21, 2019, naming officers not party to this lawsuit and alleging interference of legal mail. Id., p. 4.

- Grievance #216-1910-0168, dated October 22, 2019, naming an officer not party to this suit and alleging verbal abuse. Id., p. 5.

- Grievance #216-1912-0003, dated November 27, 2019, naming an officer not party to this suit and complaining about the washcloth issued to Plaintiff. Id., p. 3.

---

[3] The copy of this grievance is cut off so that the last digits of the number are absent.

- Grievance #1912-216-060, dated December 19, 2019, complaining of sexual harassment by an officer not a party to this suit. Id., pp. 1-2. 1.

- Grievance #20-6-01376, dated January 3, 2020, labeled as a "grievance of reprisal" claiming Plaintiff filed the instant case in federal court, had a pending PREA complaint against a non-party, and alleged he was placed in confinement on January 3 and under investigation status by an officer not party to this suit in retaliation for filing staff abuse complaints. ECF No. 32-2, p. 2.

Notably, Grievance #20-6-01376 contradicts Plaintiff's allegations in his complaint that Cox arranged for Plaintiff to be placed in confinement. The grievance did not comply with procedure; so, it was returned without action. Id., p. 1. More importantly, the grievance contained no allegation that Cox directed Plaintiff's confinement on January 3, 2020. Id., p. 2. Even if Plaintiff did file a grievance against Cox, Plaintiff would have, necessarily, filed this grievance *after* he initiated this civil rights case, which was November 27, 2019. See ECF No. 1. Therefore, the only way Plaintiff may pursue this claim against Cox is to file a new complaint, in a separate Section 1983 action, subject to a new case number and filing fee, *after* Plaintiff exhausts his administrative remedies. Exhaustion is required *before* filing a civil rights action and cannot be waived. 42 U.S.C. § 1997(e); Porter v. Nussle, 534 U.S. at 524.

*2. Plaintiff's grievances do not comply with the Florida Administrative Code or are too vague to be considered exhausted.*

It is well settled that a plaintiff fails to exhaust his administrative remedies when the grievances fail to comply with the three-step grievance procedure or the grievance addresses more than one issue or complaint, pursuant to Fla. Admin. Code 33-103.007(2)(f). <u>Pavao v. Sims</u>, F. App'x at 821; <u>see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006) ("proper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.") (internal quotations and citations omitted). In <u>Brown v. Sikes</u>, 212 F.3d 1205, 1210 (11th Cir. 2000), the Eleventh Circuit went a step further and held that: "42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims . . . as the prisoner reasonably can provide." The failure to name a prison official or to specify the facts or nature of prisoner's claim in his grievance could later prove fatal to a civil rights claim. <u>See</u> <u>Moore v. McNeil</u>, Case No. 09-22754-CIV-Seitz/White, 2016 U.S. Dist. LEXIS 118218 (S.D. Fla. Sept. 1, 2016) (order adopting magistrate judge's report and recommendation). For example, where a grievance offers "little in the way of details" and does not include dates, names, or fails to indicate mistreatment by staff, it cannot be alleged that the grievance process is exhausted. <u>Williams v. Barrow</u>, 559 F.

App'x 979, 986 (2014). <u>See</u> <u>also</u> <u>Goldsmith v. White</u>, Case No. 5:04cv72-RH/WCS, 357 F. Supp. 2d 1336, 1340-41 (N.D. Fla. 2005) (inmate who filed a grievance failed to exhaust his administrative remedies because he failed to include all known facts and failed to identify the problem of discrimination based on sexual orientation). In short, Plaintiff must provide some level of information in his grievances.

Although Defendants did not raise the affirmative defense of failure to exhaust for the August 8, 2019, incident where Robinson failed to protect Plaintiff from Defendant Chandler's alleged abuse (<u>see</u> <u>generally</u>, ECF No. 32), it is apparent from the face of Plaintiff's complaint and his attached exhibits that he failed to exhaust his administrative remedies. ECF No. 20, pp. 10-11, 26-34. "[A] complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint. . . (cautioning that the conclusion that exhaustion is not a pleading requirement 'is not to say that failure to exhaust cannot be the basis for dismissal for failure to state a claim.')." <u>Anderson v. Donald</u>, 261 F. App'x 254, 255 (11th Cir. 2008) (citing <u>Jones</u>, 549 U.S. at 216). "A complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." <u>Jones</u>, 549 U.S. at 215.

Here, the grievances naming Robinson are too general to suffice as a proper grievance or otherwise fail to comply with procedure. On **August 8, 2019**, Plaintiff filed informal Grievance #216-1908-0101, on a DC6-236 form, reporting the incident occurring the same day where Defendant Chandler made threats to use a chemical spray. ECF No. 20, p. 26. The only allegation made against Robinson is that Robinson told Plaintiff he could not go to the canteen. Id. The matter was approved and referred to the Office of Inspector General for further review. Id. Admittedly, this grievance is incomplete as it states "continued on attached" but neither party provided the attachment. Id. There is no description of Chandler's alleged "abuse" witnessed by Robinson, no details regarding the location, or other facts that Plaintiff should have known. The grievance was approved and reported to the Office of the Inspector General. Id. Even if this could be construed as completing the first step, under Fla. Admin. Code § 33.103.002(12), if Plaintiff was dissatisfied with the response, the second step is to file a formal grievance with the warden using a DC1-303 form. Id., § 33-103.006(1)(a). Finally, Plaintiff should have appealed to FDC if he "fe[lt] [a] grievance has not been satisfactorily resolved during the formal grievance procedure." Id., § 33-103.1007(1).

But, instead of filing a formal grievance with the warden, on **August 9, 2019**, Plaintiff chose to file another informal grievance, #216-1908-0099, still only generally alleging that, on August 8, Defendant Robinson, Defendant Adams, and other officers witnessed Chandler "verbally and physically abuse [Plaintiff]" but "did nothing to stop it or report it." ECF No. 20, p. 29. The matter was approved and forwarded to the Office of Inspector General for further review. Id. Plaintiff provided no details of the incident which Robinson would have witnessed. Id. Even if this would suffice as completing the first step, if Plaintiff was not satisfied, he was required to file a DC1-303 "within **15 calendar days** from the date of the response to the formal grievance." Id., §§ 33-103.006(1), 33-103.011(1)(c) (emphasis added). Unfortunately, seventeen days later, on **August 31, 2019**, Plaintiff filed an untimely, formal grievance to the warden on a DC1-303 form, again, making general allegations that Defendants Robinson, Adams, Chandler, and others are part of a clique who abuse inmates. Id., p. 31. Plaintiff claimed that the officers "watched . . . Chandler verbally and physically abuse [him] and laughed about it" but made no mention of any date, time, location, or other details about the alleged "abuse." Id. The grievance was approved and referred to the Office of the Inspector General. Id., p. 32. Regrettably, the grievances filed regarding the August 8 incident for failure to protect, offer

too little in the way of detail. A general allegation that Robinson witnessed verbal and physical abuse on a particular day, without more does not satisfy the exhaustion requirement. See Williams v. Barrow, 559 F. App'x at 986 (2014). Additionally, "an untimely grievance does not satisfy the exhaustion requirement of the PLRA." Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005).

At least one more grievance does not comply with the Fla. Admin. Code. On August 22, 2019, prison authorities issued a response to grievance #1908-216-046 approving it ". . . 'ONLY' to be reported to the inspector." Id., p. 27. The same day, the prison issued a Response to Appeal of Grievance #1908-216-085 but returned it because it already issued a decision on the merits for grievance #1908-216-046. ECF No. 20, p. 28. Accordingly, the return was for non-compliance -- previously resolved -- and cannot satisfy the exhaustion requirement. Because the parties did not provide the grievance related to these responses as an accompanying exhibit, this Court cannot know what grievance #1908-216-046 presented. Still, there is no record or indication from Plaintiff that he appealed grievance #1908-216-046, in accordance with the grievance procedure; therefore, the claims would remain unexhausted.

In sum, Plaintiff's grievances alleging Robinson failed to protect him from Chandler do not present the factual scenario Plaintiff asserts in his complaint. Ultimately, Plaintiff did not follow the proper procedures: (1) he filed duplicate informal grievances rather than properly appealing, (2) he filed an untimely DC1-303 to the warden, and (3) he did not file an appeal to the FDC Secretary.

Similarly, on **September 21, 2019**, Plaintiff filed informal grievance #216-1909-0195 "concern[ing] the legal documents of other inmates." ECF No. 32-4, p. 11. Plaintiff generally alleged that a day earlier he was "involved in an altercation with Sgt. Robinson that resulted in [him] being assaulted by Sgt. Robinson and confined." Id. Plaintiff provided no details of the alleged assault whatsoever. Id. Rather, Plaintiff alleged that Robinson, in retaliation for Plaintiff filing grievances, confiscated his personal property and the legal work Plaintiff had for other inmates.[4] Id. The grievance was returned without action to Plaintiff because it addressed more than one issue or complaint. Id.

The same day, Plaintiff submitted a letter to the FDLE, the wrong party, and without any details of the alleged assault by Robinson. ECF No. 35, pp. 7-8. Although the letter states a grievance was attached, Plaintiff did not

---

[4] Plaintiff did not present this claim in his complaint.

provide it as an exhibit. Defendant provides the attachment to the FDLE letter, a "Request for Administrative Remedy or Appeal" dated September 22 and addressed to the FDC Secretary. ECF No. 32-5, pp. 3-4. The attached grievance does contain the allegations made in Plaintiff's complaint -- that Robinson assaulted him by ramming his face in the door and into the wall. Id., p. 4. However, in the letter Plaintiff asked the FDLE to forward his grievance to the Secretary on his behalf. Still, this is insufficient because "submitting complaints to the wrong parties – [i.e.] the FDLE and the attorney general's office - does not constitute exhaustion." Kozuh v. Nichols, 185 F. App'x at 878. Plaintiff did not file the grievance directly to the FDC Secretary on his own; and he also filed it out of turn before appealing to the warden. Moreover, Plaintiff's assertion in his complaint that Plaintiff claims he informed Cox in person that he had been assaulted by Robinson and Cox agreed to look into the matter, ECF No. 20, p. 13, even if true, fails to comply with the grievance procedure. The grievance must be in writing and properly appealed.

More than one month after the alleged assault, on **October 22, 2019**, Plaintiff filed another informal grievance #216-1919-0169 and claimed that on September 22, he filed grievances alleging Robinson's assault, he sent a copy of the grievances to FDLE, and his grievances regarding the alleged

assault remained unresolved. ECF No. 32-4, p. 6. Like the grievances alleging failure to protect, Plaintiff's grievances alleging excessive force are simply too vague to be considered an attempt to file a grievance against Defendant Robinson. More importantly, Plaintiff failed to follow the grievance procedure because he already filed an informal grievance and, if not satisfied with the response, he was required to file a DC1-303 form with the warden within fifteen days of the incident followed by an appeal to the FDC Secretary as outlined in the Florida Administrative Code.

It is not lost on the Court that Plaintiff filed numerous grievances against Defendant Robinson, but he has failed to show that he fully complied with Florida's three-step grievance procedure. When a plaintiff files a grievance "at the wrong level" or does not appeal a denied grievance, he fails to properly exhaust his administrative remedies. Schlicher v. Fla. Dept of Corr., 399 F. App'x at 539.

Finally, it is clear Plaintiff did not file any grievance against Defendant Cox. This failure means Plaintiff cannot satisfy the exhaustion requirement. The PLRA requires him to do so. 42 U.S.C. § 1997(e); Woodford, 548 U.S. at 90. The Court may not waive the requirement set forth by Congress. Accordingly, the motion to dismiss claims against Cox and Robinson should be GRANTED.

## VI.    Conclusion and Recommendation

It is respectfully recommended that Defendants' Motion to Dismiss, ECF No. 32, be GRANTED for failure to exhaust administrative remedies pursuant to 28 U.S.C. § 1997(e) and that the case against Defendants Cox and Robinson should be DISMISSED. Accordingly, the case should continue to PROCEED against the remaining Defendants who are not party to the motion to dismiss, ECF No. 32.

IN CHAMBERS at Tallahassee, Florida, on October 22, 2020.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).